# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

HAROLD A. GUSTAFSON,

    *Petitioner*,

vs.

BRIAN E. WILLIAMS, *et al.*

    *Respondents.*

2:09-cv-01225-KJD-LRL

ORDER

    This represented habeas matter under 28 U.S.C. § 2254, which was transferred from this District to the District of Minnesota, comes before the Court on petitioner's motion (#24) under Rule 60(b) or in the alternative Rule 6(b).  Petitioner does not seek rehearing on the underlying transfer order *per se*.  Rather, petitioner requests that the Court "set aside its order and reissue it," #24, at 7, so that petitioner will have another opportunity to seek a permissive interlocutory appeal under 28 U.S.C. § 1292(b) within ten days as provided for previously in the prior order (#22).  Petitioner took no action in response to the prior order within the ten-day period for applying to the Court of Appeals under § 1292(b), and the matter thereafter was transferred to the District of Minnesota.

## *Background*

    Petitioner Harold Gustafson seeks to challenge his Minnesota state judgment of conviction for first degree murder.  He has been incarcerated in Nevada, however, on behalf of Minnesota authorities pursuant to an interstate corrections compact.  This case does not involve a detainer or any other claim involving future custody.  Petitioner instead has been

1  held in current physical custody on the Minnesota judgment of conviction, albeit by Nevada
2  authorities as agents for Minnesota authorities rather than directly by Minnesota authorities.
3  By an order (#21) entered on May 10, 2010, the Court granted respondents' motion
4  to transfer the action to the District of Minnesota.  The Court certified the order, however, for
5  a possible permissive interlocutory appeal to the Court of Appeals under 28 U.S.C. § 1292(b),
6  contingent upon petitioner making a timely application within ten days of the order to the Court
7  of Appeals for permission to pursue the interlocutory appeal.  In the meantime, the transfer
8  under the order was not immediately effective.  The Court instead directed the Clerk to
9  transfer the case to the District of Minnesota no earlier than: (a) forty-five (45) days following
10  entry of the order; or (b) if timely application was made for permission to appeal the order,
11  thirty (30) days following receipt of the mandate or other final order from the Court of Appeals,
12  subject to the order on the appeal by the Court of Appeals and/or any order regarding a
13  further stay of proceedings.
14  No application was made thereafter to the Ninth Circuit for permission to pursue a
15  permissive interlocutory appeal under § 1292(b).
16  Accordingly, on June 28, 2010, the Clerk of this Court transferred the matter to the
17  District of Minnesota. #22.
18  Critically, on June 29, 2010, the Clerk of this Court received, filed and entered the
19  transmittal return from the Clerk of Court for the District of Minnesota advising that the case
20  had been docketed in that Court as No. 0:10-cv-02732.
21  A month later, on July 29, 2010, petitioner filed the present motion seeking in essence
22  for this Court to recertify the matter for an interlocutory appeal under § 1292(b).
23  Petitioner relies upon the following.  The e-mail address given to the Clerk of this Court
24  for notices of electronic filing was counsel's professional website address.  Counsel asserts
25  in the unsworn motion that "unbeknownst" to him, the e-mails then were forwarded from the
26  professional web site to his personal e-mail account.  He maintains that his office changed
27  to a different professional website in approximately April 2010.  Counsel did not provide the
28  Clerk with an updated e-mail address after the change.  Counsel states that he was of the

1  belief that his e-mail address with the Clerk was established through his own personal e-mail

2  address rather than that from the old professional website.  Counsel asserts that the present

3  case is his only federal case, such that he was not aware that he was not receiving notices

4  sent from the Clerk.  He maintains that he first learned of the transfer on July 16, 2010, when

5  he received correspondence from the transferee court in the District of Minnesota.

6  ### *Discussion*

7          It is well- and long-established law that the docketing of a transferred case in an out-of-

8  circuit transferee court terminates the jurisdiction of both the transferor court and the

9  corresponding court of appeals.  *See,e.g., NBS Imaging Systems, Inc. v. United States*

10  *District Court*, 841 F.2d 297, 298 (9th Cir. 1988); *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir.

11  1987); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* §

12  3846 (3rd ed. 2010).  This Court accordingly structured its prior order in the fashion that it did.

13  The Court delayed the actual transfer until petitioner had an opportunity to apply for

14  permission to pursue a § 1292(b) appeal as per the Court's certification.  When the case

15  thereafter was transferred to and docketed in the transferee court after petitioner failed to

16  pursue such an appeal, any potential jurisdiction in either this Court or the Ninth Circuit with

17  respect to such a § 1292(b) appeal was terminated.  This Court therefore has no jurisdiction

18  to grant the relief requested.[1]

19

_____

20
21          [1]This Court defers to the Ninth Circuit with regard to the determination of its own jurisdiction.  The
statement in the text with regard to appellate jurisdiction, however, would appear to be well-established under
Ninth Circuit authority.

22
23          This Court would reach the same conclusion as in the text with regard to its own lack of jurisdiction
even if the Court were to view habeas transfer rules as arising *sui generis* rather than under 28 U.S.C. §
24  1404(a).  *Cf.* #21, at 5 n.6 (discussing possibility that habeas transfer rules arise *sui generis* rather than under
§ 1404(a)).  Nothing of substance would be gained in the administration of justice generally by treating the
jurisdictional effect of the docketing of the case in the transferee court differently on a habeas transfer than on
25  a § 1404(a) transfer (if distinct from habeas transfer in the first instance).  A proliferation of exceptions and
distinctions of questionable value in jurisdictional analysis is not to be encouraged.  *Cf. Hertz Corp. v. Friend*,
26  130 S.Ct. 1181, 1193 (2010)(discussing the value of simple and predictable jurisdictional rules); *Grupo
Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 582, 124 S.Ct. 1920, 1930, 158 L.Ed.2d 866 (2004)
27  (rejecting proposed deviation from a long-established jurisdictional rule in favor of maintaining a clear and
certain jurisdictional rule).  At some point, every issue has to come to a close, particularly issues pertaining
28                                                                                                          (continued...)

1  Even if the Court were to assume, *arguendo*, that it had jurisdiction to consider the

2  motion, the Court is not inclined to grant the motion in the exercise of its discretion.

3  Petitioner invokes Rule 60(b) and 6(b) of the Federal Rules of Civil Procedure.  Neither

4  rule is applicable in this procedural context.

5  Rule 60 addresses motions seeking relief from a final judgment or order.  The Court

6  did not enter a final judgment or order.  It instead entered an interlocutory order transferring

7  the case.  The rule as to that type of order is that the district court has no jurisdiction to

8  reconsider the order after the case has been docketed in the transferee court.  Rule 60(b) has

9  no application here.

10  Rule 6(b)(1)(B) allows for the extension of an expired deadline if a party failed to act

11  because of excusable neglect.  Under Rule 1, the Federal Rules of Civil Procedure govern

12  proceedings in the district courts.  Rule 6(b) is not a rule governing the extension of time for

13  pursuing an appeal, whether under § 1292(b) or otherwise.  Rule 6(b) thus also has no

14  application here.

15  The Ninth Circuit's decision in *In re Benny*, 812 F.2d 1133 (9th Cir. 1987), instead

16  states the rule of law applicable to this situation when jurisdiction is present.  The Ninth Circuit

17  noted that Rule 26(b) barred the Court of Appeals from extending the ten-day time limit.  812

18  F.2d at 1136.  The appellate court then considered whether a district court nonetheless could

19  in effect extend the time limit by recertifying its order, in a context where the district court

20  otherwise had not lost jurisdiction over the case.

21  *Benny* rejected a rigid rule where the district court could not recertify the order if

22  counsel's neglect caused the failure to timely seek permission.  812 F.2d at 1136.

23  *Benny* also rejected a flexible rule that allowed recertification "even though counsel's

24  neglect caused the failure to file a timely petition after the original recertification."  The Ninth

25  _____

26  [1](...continued)

27  only to forum rather than substance.  The docketing of the transferred case in the transferor court constitutes
a clear and sensible point at which to draw the jurisdictional line terminating the authority of the transferor

28  court over the case both in habeas as well as on a § 1404(a) transfer (if distinct from habeas transfer in the
first instance).

1  Circuit concluded that decisions from other circuits taking this approach "go too far in the
2  other direction" and "effectively *eliminate* the ten-day jurisdictional limit completely by allowing
3  apparently uncontrolled and repeated recertifications."   812 F.2d at 1137 (emphasis in
4  original).

5  　　　*Benny* instead took what the Ninth Circuit described as the "middle road" adopted by
6  the Seventh Circuit in *Nuclear Engineering Co. v. Scott*, 660 F.2d 241 (7th Cir. 1981):

> In *Nuclear Engineering*, the Seventh Circuit held that the
> critical inquiry is whether recertification advances the purposes of
> section 1292(b).  If recertification will foster judicial efficiency and
> the district court recertifies the order, then the appellate court
> ought not to deny review solely because the petitioner failed to
> take advantage of the original certification.   We therefore hold
> that if, as in this case, a district court on reconsideration
> recertifies for interlocutory appeal an order that was previously
> certified for appeal but from which the appellant failed to timely
> petition to appeal, the court of appeals may exercise jurisdiction
> over the appeal if it determines that jurisdiction over the appeal
> would serve judicial efficiency.

14  812 F.2d at 1137.[2]

15  　　　In the present case, the Court does not find that recertification would foster judicial
16  efficiency.  The case now is lodged in the transferee court.  To grant recertification at this
17  point, the Court would be acting in a context where the issue of whether it now has jurisdiction
18  in the first instance to take action in the transferred case overshadows the issue as to which
19  it first certified the case for appeal.  The case would have to be re-transferred back to this
20  Court, a recertification of the prior order made, and then permission applied for in the Court
21  of Appeals.  Particularly in a habeas case, as elaborated upon below, the interlocutory appeal
22  on the question of whether there was authority to transfer the action was one that needed to
23  be pursued expeditiously rather than after the transfer became effective.

24  　　　In this regard, the Court notes that resolution of the underlying question at issue in
25  *Benny* was critical to the adjudication of all bankruptcy cases.  The issue literally went to the

27  　　　[2] *See also Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 159-62, 104 S.Ct. 1723, 1730-
28  31, 80 L.Ed.2d 196 (1984)(Stewart, J., dissenting as to other issues)(related discussion); 16 C. Wright, A.
Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3929, at nn. 70-71.7 (2d ed. 2010).

constitutionality of the entire bankruptcy judicial system following upon the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Here, in contrast, the issue of the district court's authority to transfer the action in the context presented, while significant, is not one that affects every habeas matter brought. The issue will arise again in another case in due course, and the question and transfer order potentially can be certified for a permissive interlocutory appeal in such a later case, depending upon the case law at that time.[3]

Moreover, the Court makes no implicit or tacit holding that counsel's failure to timely seek permission to pursue an interlocutory appeal was due to excusable neglect. Whether counsel has one federal case or a thousand, it is his obligation to provide the Clerk with an e-mail address for the electronic docketing system at which he will receive the notices of electronic filing. The Clerk sent the notice of electronic filing to the e-mail address given by counsel. Regardless of what counsel's office did thereafter with the notice sent to that address in regard to forwarded e-mails and/or what counsel knew about what *his* office was doing with the e-mail, the obligation to provide a viable, working e-mail address remained with counsel. Moreover, it is basic common sense following a web or physical address move to ensure that e-mail or physical mail is properly forwarded thereafter. Counsel did not provide an updated e-mail address to this Court after the website change, and counsel had given the prior *office* e-mail address, not his personal e-mail address, to the Clerk of this Court.

At bottom, it is counsel's responsibility to provide the Clerk with a working and current e-mail address at which he will receive notices of electronic filing. If counsel fails to provide the Clerk with an e-mail address at which he actually will receive the notices and/or fails to update the e-mail address on file after a web move, the failure to receive notices from the

---

[3]The Court additionally notes that petitioner perhaps misunderstands the prior order in stating that the Court "clearly expressed . . . that it felt it was, perhaps, in the woods on the issue." #26, at 6. The Court has full confidence in the correctness of its ruling. The standard for certifying a case for a potential permissive interlocutory appeal is whether, *inter alia*, the order involves a controlling question of law as to which there is substantial ground for difference of opinion. The Court was not "punting" on an issue that it could not resolve but instead was certifying an order for possible appeal as to which there was substantial room for argument.

1  Court is not a matter of isolated inadvertence.  Rather, the failure to receive notices instead

2  is a foreseeable consequence of failing to provide a viable and/or properly updated e-mail

3  address to the Clerk.  *Cf. Nuclear Engineering*, 660 F.2d at 248 (taking into account that the

4  failure to timely seek permission was due to a not unreasonable reading of the statute).

5        The Court further finds that respondents will sustain not insignificant prejudice if it were

6  to seek to recertify the order for a permissive interlocutory appeal following the completed

7  transfer of the case.  A federal habeas matter is not ordinary civil litigation.  A federal habeas

8  matter instead presents a collateral attack to a presumptively valid state court judgment of

9  conviction.  Interests of speedy and final adjudication are particularly strong where collateral

10  attacks on state court judgments of conviction are involved, due to the interests of comity and

11  federalism implicated by federal judicial review of state court convictions.  As a result, there

12  is a significant interest in expeditious adjudication of issues in federal habeas cases, for the

13  respondents as well as for the petitioner.  *See, e.g., Day v. McDonough*, 547 U.S. 198, 208,

14  126 S.Ct. 1675, 1683, 164 L.Ed.2d 376 (2006); *Rhines v. Weber*, 544 U.S. 269, 276-78, 125

15  S.Ct. 1528, 1534-35, 161 L.Ed.2d 440 (2005).  Now that this case is lodged in the District of

16  Minnesota following the completed transfer, these interests counsel against now fanning life

17  back into the otherwise closed forum issue and in favor of proceeding forward to a resolution

18  of the case.

19        Finally, petitioner includes in his argument on the procedural issue an appeal to justice

20  based upon the assertion that an innocent man has been convicted unconstitutionally.  He

21  states that he "believes that he cannot get a fair hearing in Minnesota."[4]  He does so in

22  arguing a standard applicable to a Rule 60(b) motion that has no relevance to the current

23  issue.  In all events, this Court has every confidence that the District of Minnesota will be as

24  fully vigilant as this Court would have been in considering petitioner's constitutional claims,

25  subject to the particular procedural and merits issues potentially presented in this case.  The

26  question of which federal forum those issues will be resolved in has nothing to do either with

27  _____

28        [4]#24, at 4.

-7-

1  the merits of the case or the quality of the consideration that petitioner's case then will

2  receive.

3       IT THEREFORE IS ORDERED that petitioner's motion (#24) under Rule 60(b) or in the

4  alternative Rule 6(b) is DENIED.

5       The Clerk of this Court shall forward a supplemental transmittal or notice of electronic

6  filing reflecting this order to the Clerk of Court for the District of Minnesota, in a manner

7  consistent with the Clerk's current practice for such matters.

8       DATED: October 25, 2010

9

10                              _____

11                              KENT J. DAWSON
                             United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-